# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | | |
|---|---|---|
| **BARTEX RESEARCH, LLC** | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 6:07-CV-385 |
| | § | |
| **FEDEX CORP.,** | § | |
| et al. | § | |

## MEMORANDUM OPINION AND ORDER

This claim construction opinion construes the disputed term in United States Patent No. 6,666,377 ("the '337 patent"). Plaintiff BarTex Research, LLC ("Plaintiff") has accused Defendants FedEx Corporation, FedEx Express Corporation, FedEx Ground Package System Inc., and FedEx Kinko's Office and Print Services, Inc. (collectively "Defendants") of infringing claims 1, 2, 5, 7, 8, 10, 11, 13, 17, 18, 19, and 20 of United States Patent No. 6,666,377 ("the '377 patent"). The parties agreed on, and the Court adopted, the construction of four terms ("format," "information," "portion," and "part") (Doc. No. 75). The parties disagree on the construction of four other terms ("scanning process," "second," "abbreviated," and "personal identification information"). The parties originally represented to the Court that no claim construction beyond the agreed terms was necessary. BarTex requested (Doc. No. 84) and the Court granted (Doc. No. 92) a supplementary claim construction. The parties have fully brief their positions (Doc. Nos. 96, 98, 101, 104). During a telephone conference on September 22, the parties represented that a *Markman* hearing was unnecessary and that the Court could rule based on their submissions. For the reasons stated herein, the Court adopts the constructions set forth below.

## BACKGROUND

The claimed inventions of the '377 patent relate to bar code technology. "The present

application teaches using scanned information from a scannable code to enter special kinds of information." '377 Patent col. 1:21-23. The specification discloses several embodiments wherein a bar code is capable of providing information to a computer device. '377 Patent col. 1:23-37, 1:58-2:2. "The bar codes can represent the information itself, or can represent an address from a look up database which includes more information about a bar code." '377 Patent col. 1:33-35.

The patent consists of three independent claims. Independent claims 1 recites:

> A bar code, comprising:
> a first bar code portion, which represents a first format bar code, and would be found as valid when scanned by a first bar code **scanning process** to provide first information, and a **second** bar code portion, formed in a **second** format which is different than said first format, but associated with said first format bar code portion, and said **second** bar code portion representing additional information beyond the first information provided by said first bar code portion, and wherein said additional information includes the same informaton [sic] as said first information, and also includes additional information that is different than said first information.

'377 Patent col. 7:60-8:7 (emphasis added). Independent claim 10 recites:

> A bar code, comprising a first part which is interpreted by a first bar code **scanning process** to obtain **first abbreviated information**, and a **second** part which is interpreted by a **second** bar **code scanning process** to obtain **second** information, which has more information than said first information, wherein said additional information includes the same information as said first information, and also includes additional information.

'377 Patent col. 8:38-46 (emphasis added). Independent claim 17 recites:

> A bar code comprising:
> a first part having first information encoded therein in a first bar code format; and
> **a second** part having second information encoded therein in a **second** format, different than said first format, said **second** information having both the first information and also **second** information therein.

2

'377 Patent col. 9:3-10 (emphasis added).

After the present suit was filed, FedEx requested an *inter partes* reexamination of the '377 patent. The PTO granted the request and initially rejected all issued claims. BarTex responded to that Office Action and, as far as the Court is aware, is awaiting a further response.

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Communications Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861.

Claim construction analysis begins with the words of the claims themselves. *Phillips*, 415 F.3d at 1314. A term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314-15.

Claims "must be read in view of the specification, of which they are a part." *Id*. (quoting

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

## DISCUSSION

### I. "Scanning Process"

| Claim Term | BarTex's Proposal | FedEx's Proposal |
|---|---|---|
| **Scanning Process**<br>*Claims 1 and 10* | The process by which the bar code is read that requires a link or call to a database | Ordinary meaning, i.e. the process by which the bar code is scanned<br><br>*Alternatively*: the process by |

4

|  |  | which the bar code is read and decoded |
|---|---|---|

Plaintiff contends that the term "scanning process" requires a link or call to a database. Plaintiff argues that the patent discloses two embodiments, one where the bar code itself represents information and a second where the bar code represents an address in a database where the information is stored. Plaintiff notes that independent claims 1 and 10 include a "scanning process" whereas claim 17 does not. Plaintiff argues that claims 1 and 10 are directed to the second embodiment and thus the term "scanning process" implicates a link or call to a database. Plaintiff contends the specification supports this construction.

Defendants contend the term does not require construction and that Plaintiff's proposal improperly imports an alternative embodiment into the claims. Defendants argue that the term simply refers to the process of reading a bar code to obtain the information encoded in a bar code portion or part - a process familiar to a lay jury. Alternatively, Defendants propose construing the term as "the process by which the bar code is read and decoded." Defendants argue that regardless of the particular scanning method utilized, a scanning process obtains only the information encoded within the bar code itself. That is, although the information encoded in a bar code may be a reference to a database, a call to a database is not part of the scanning process. Defendants argue that Plaintiff's present argument is inconsistent with its argument during reexamination where Plaintiff represented claim 17 implicitly included a scanning process involving a call to a database. Defendants further argue that the doctrine of claim differentiation bars Plaintiff's proposal because proposed claims in Plaintiff's reexamination and reissue applications explicitly recite a call to a

5

database. Finally, Defendants argue that Plaintiff's proposal is legally improper as it would render the claims invalid by importing a method step into an apparatus claim.

In its reply, Plaintiff argues that Defendants' inclusion of decoding in its alternative proposal is improper because the described scanning process reads a bar code but does not decode it. Plaintiff identifies an express limitation in claim 17, but absent from claims 1 and 10, that the information is encoded. Plaintiff argues its present argument is not inconsistent with the positions it has taken during reexamination, there is no authority for applying the doctrine of claim differentiation to pending claims, and in any event claim differentiation would be inapplicable because the pending claims do not depend from any of the present independent claims. Finally, Plaintiff contends that its construction would not introduce a method step to its apparatus claims; rather its proposal simply makes clear that the apparatus is capable of being used to call to a database.

As an initial matter, the Court declines to consider whether Plaintiff's present argument is inconsistent with its position before the PTO in the co-pending reexamination. Although a position taken before the PTO may bar an inconsistent position in subsequent litigation, *see Intermatic, Inc. v. Lamson & Sessions Co.*, 273 F.3d 1355, 1367 (Fed. Cir. 2001), *vacated on other grounds*, 535 U.S. 722 (2002), Defendants fail to cite to, and the Court is unaware of, any authority applying this principle where the reexamination was still pending. *See Edizone, L.C. v. Cloud Nine*, No. 1:04-cv-117, 2008 U.S. Dist. LEXIS 15792, at *5-6 (D. Utah Feb. 29, 2008) (finding the same). Similarly, consideration of any proposed amendments or new claims is inappropriate. *See Id. at *6* ("Even though the PTO 'will treat the proposed amendments as though they have been entered, the proposed amendments will not be effective until the reexamination certificate is issued and published'" (quoting 37 C.F.R. § 1.530(k))). Thus, Defendants' arguments are inapplicable to the present facts.

Likewise, the Court is not persuaded by Plaintiff's argument differentiating claims 1 and 10 from claim 17 on the basis of the inclusion of the term "scanning process." The '377 patent teaches "[t]he bar codes can represent the information itself, or can represent an address from a look up database which includes more information about a bar code." '377 Patent col. 1:33-35. The specification goes on to describe numerous methods of scanning a bar code. *See, e.g.,* '377 Patent col. 2:3-7 (disclosing the use of a camera to scan a bar code). Nothing in the specification, the claim language, or the differences between claims 1, 10, and 17, compels the conclusion that the term "scanning process" must be associated with bar codes used to call or link to databases.

The Court finds that the term "scanning process" refers to a process by which information is derived from a bar code. This process may or may not include calling or linking to a database. *Compare* '377 Patent cols. 1:32; 3:56-62; 4:24-33; 5:29-31 (describing embodiments where the bar code represents information itself) *with* '377 Patent cols. 1:33-35; 3:63-64; 4:33-37; 4:49-64; 6:36-38) (describing embodiments where the bar code represents a database address from which information may be obtained). Although the inventions of claims 1 and 10 are capable of being used to call or link to a database, the claims do not require interaction with a database.[1] The Court will not import limitations from the specification into the claim language. *See Phillips*, 415 F.3d at 1323 (warning against limiting claims to specific embodiments disclosed in the specification).

Having resolved the parties' claim scope dispute, the Court must now determine how best to communicate the term to a lay jury. The Court finds that the term does not have a plain and ordinary meaning that would be readily understood by a lay jury. The Court will essentially adopt

---

[1] The Court recognizes the parties dispute whether the claim language is indefinite for importing a method step into an apparatus claim. Defendants filed a summary judgment motion on that matter (Doc. No. 115). The Court declines to address the matter here and instead will consider it in the context of the summary judgment motion.

Defendants' proposal and therefore construes the term "scanning process" as "the process by which the bar code is read."

**II. "Second"**

| Claim Term | BarTex's Proposal | FedEx's Proposal |
|---|---|---|
| **Second** *Claims 1, 2, 5, 7, 10, 11, 17-22* | The bar code is independently positioned and/or placed | Ordinary meaning, i.e. distinguishing between repeated instance of an element |

Plaintiff contends that, although the words "independently positioned and/or placed" are not used in the specification, one of ordinary skill in the art would understand from the description of the invention that the bar code portions are so placed. Plaintiff argues that the specification describes scanning either portion, independent of the other, and thus placement of one portion is not dependent on the other.

Defendants contend that the term does not require construction. Defendants argue that the term "second" is used throughout the patent in different contexts and in each instance is simply used to distinguish a second claim element from a first claim element. Defendants further argue that Plaintiff's proposal is not supported by the claim language, the specification, or the prosecution history. Defendants contend that the use of the term in the claim language does not suggest the additional independent placement limitation; rather, the term indicates a single structure that consists of at least two portions. Defendants contend that Plaintiff's proposal is hopelessly vague because there is no basis for determining what "independently positioned and/or placed" means. Finally, Defendants further argue that the doctrine of claim differentiation bars Plaintiff's proposal because claims pending in the reexamination and reissue applications explicitly recite independent

positioning.

The Court finds that the term "second" does not suggest either independent or dependent placement. Contrary to Plaintiff's contention, the description of the invention and the specification do not support reading an independent placement limitation into the scope of the term "second." Although the specification teaches independent scanning of bar code portions, *see, e.g.,* '377 Patent col. 6:24-43, it does not follow that the bar code portions are independently placed. Thus, the term simply distinguishes a second bar code portion or part, '377 Patent claims 1, 10, 17, scanning process, '377 Patent claim 10, or information, '377 Patent claim 10, 17, from a first instance. *See 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003) ("The use of the terms 'first' and 'second' is a common patent-law convention to distinguish between repeated instances of an element or limitation"); *see also Free Motion Fitness, Inc. v. Cybex Int'l, Inc.*, 423 F.3d 1343, 1348 (Fed. Cir. 2005). When used in the specification, the term "second" distinguishes repeated instances of elements and does not implicate placement. *See* '377 Patent col. 5:60-61 (distinguishing a second bar code part from a first part); 6:55-57 (distinguishing a second bar code from a first bar code); 6:57-61 (distinguishing a second stripe from a first and a third stripe); *see also Free Motion Fitness*, 423. F.3d at 1348 ("'First' does not denote spatial location"). Thus, the term "second" does not dictate whether bar code portions or parts must be independently or dependently placed.

Having resolved the parties' claim scope dispute, the Court must now determine how best to communicate the term to a lay jury. The Court finds that a lay jury would benefit from some construction of the term. The Court will explain to the jury that the term "second" is used in a claim to distinguish between repeated instances of an element.

9

### III. "Abbreviated"

| Claim Term | BarTex's Proposal | FedEx's Proposal |
|---|---|---|
| **Abbreviated** *Claim 10* | One or more characters that represent some larger piece of information that can be linked or called to a database, and that database, using the character(s), can decipher or determine the larger piece of information represented | Ordinary meaning, i.e. shortened |

Plaintiff contends its proposal is consistent with the commonly understood meaning of the term. Plaintiff argues that its proposal simply provides further clarity within the context of the claims. Plaintiff further argues that its proposal is supported by the specification's examples of abbreviated information.

Defendants contend that the term does not appear in the specification or prosecution history, but nevertheless is used in accordance with its plain and ordinary meaning. Defendants argue that the examples that Plaintiff cited are not examples of abbreviated information. Defendants further argue that Plaintiff's proposal improperly imports limitations into the claims.

The Court finds no basis for importing a database call limitation into the scope of the term "abbreviated." Outside of the claim language, the term "abbreviated" does not appear in the '377 patent. Plaintiff cites an example from the specification wherein a bar code represents a database command and address. *See* PL'S. MOT. at 15-16 (quoting '377 Patent col. 4:2-8). Contrary to Plaintiff's contention, this embodiment does not describe abbreviated information as used in claim 10; rather, the command and address are obtained by the scanning process and represent complete

information that may be used to access a database. *See* '377 Patent col. 4:2-8 ("the bar code may store an address command . . . followed by a base 39 alphanumeric value"). Furthermore, in light of the Court's rejection of Plaintiff's "scanning process" construction, the context of claim 10 does not compel the conclusion that the term "abbreviated" necessarily involves a database call. Abbreviated information is simply an amount of information found in a first bar code portion that is shorter or briefer than that which is found in the second bar code portion. *Compare* '377 Patent col. 6:33-35 ("[E]nhanced information can be additional information, or it can be the same information as in the first bar code portion, as well as additional information") *with* '377 Patent col. 8:38-46 (claiming a bar code which includes a first part capable of providing "first abbreviated information" and a second part capable of providing "second information, which has more information that said first information, wherein said additional information includes the same information as said first information, and also includes additional information"). Accordingly, the Court finds it appropriate to construe this term in light of what is actually claimed in claim 10.

While the Court agrees generally with Defendants that the term "abbreviated" has a plain and ordinary meaning, the Court finds it more appropriate to construe the phrase "first abbreviated information." In keeping with the above discussion of the specification and the language of claim 10, the Court construes the term as "an amount of information found in the first information that is shorter or briefer than that which is found in the second information."

**IV. "Personal Identification Information"**

| Claim Term | BarTex's Proposal | FedEx's Proposal |
|---|---|---|
| **Personal Identification Information** | Information which may be used to personally identify a | Ordinary meaning, i.e. information that identifies a |

| *Claim 15* | user | person |

Plaintiff contends its proposal clarifies the meaning of the term and is supported by the specification. Plaintiff agues that Defendants' proposal fails to provide the jury with guidance as to the meaning and scope of the term. Plaintiff states that Defendants' argument improperly limits the scope of the term to a specific embodiment.

Defendant argues that the specification's embodiments describe information that can only be used to describe persons. Defendant further argues that Plaintiff's proposal departs from the specification and improperly focuses on how the information may be used. Finally, Defendant contends that the term must refer to a person; that is, the information cannot relate to a "non-person."

The Court finds "Personal Identification Information" includes information that may be used to identify a person. The specification describes examples of Personal Identification Information that are applicable only to people. *See* '377 Patent col. 2:66-3:18 (describing "personal identifying information" as "a picture of the user's face, fingerprint information, dynamic information about the user's signature, i.e. the way that the user actually makes the signature"). Although Plaintiff is not confined to those examples disclosed in the specification, *see Phillips*, 415 F.3d at 1323, the Court is not persuaded that Personal Identification Information can include information that identifies a non-person entity. The specification does not identify any examples of information that could identify a non-person entity and thus does not support such a construction. Allowing such a construction would render the modifier "personal" devoid of any meaning and effectively eliminate it from the claim language. It is difficult to imagine how the word "personal" could be used in any way other than in reference to a person. Furthermore, the Court finds that the language of the term

is readily understandable by a jury and thus no construction is necessary. *See O2 Micro Int'l*, 521 F.3d at 1362; *Fenner Inv.*, 2008 WL 3981838 at *3. Although the Court will not construe this term, the parties may not interpret it in a manner that is inconsistent with this opinion.

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. For ease of reference, the Court's claim interpretations are set forth in a table attached to this opinion as Appendix A.

**So ORDERED and SIGNED this 14th day of December, 2009.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

# APPENDIX A

| Claim Term | BarTex's Proposal | FedEx's Proposal | Court's Construction |
|---|---|---|---|
| **Scanning Process** <br> *Claims 1 and 10* | The process by which the bar code is read that requires a link or call to a database | Ordinary meaning, i.e. the process by which the bar code is scanned <br><br> *Alternatively*: the process by which the bar code is read and decoded | The process by which the bar code is read |
| **Second** <br> *Claims 1, 2, 5, 7, 10, 11, 17-22* | The bar code is independently positioned and/or placed | Ordinary meaning, i.e. distinguishing between repeated instance of an element | Used in a claim to distinguish between repeated instances of an element |
| **First abbreviated information** <br> *Claim 10* | One or more characters that represent some larger piece of information that can be linked or called to a database, and that database, using the character(s), can decipher or determine the larger piece of information represented | Ordinary meaning, i.e. shortened | An amount of information found in the first information that is shorter or briefer than that which is found in the second information |
| **Personal Identification Information** <br> *Claim 15* | Information which may be used to personally identify a user | Ordinary meaning, i.e. information that identifies a person | No construction necessary |