# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **BARTEX RESEARCH, LLC** § § § § § § § § § § § § § | **CIVIL ACTION NO. 6:07-cv-385 LED-JDL** |
| v. | |
| **FEDEX CORPORATION, FEDEX EXPRESS CORPORATION, FEDEX GROUND PACKAGE SYSTEM, INC., and FEDEX KINKO'S OFFICE AND PRINT SERVICES, INC.,** | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant FedEx Corporation's ("FedEx") Motion to Award Attorneys' Fees (Doc. No. 171). FedEx has also filed a Reply (Doc. No. 174), while Plaintiff BarTex Research, LLC, ("BarTex") has filed both a Response (Doc. No. 173) and a Surreply (Doc. No. 175). The instant motion presents a number of issues with respect to Defendant's request for an award of fees. Having fully considered the parties' arguments and for the reasons set forth herein, the Court hereby **DENIES** Defendant FedEx's Motion to Award Attorneys' Fees.

## BACKGROUND

On August 16, 2007, Plaintiff BarTex filed suit against Defendant FedEx alleging infringement of U.S. Patent No. 6,666,377 ("the '377 patent") (Doc. No. 1). On March 13, 2009, FedEx sent BarTex a letter asking for its Rule 11 basis for continuing the case in light of certain allegedly invalidating prior art. (Doc. No. 156 at 5). BarTex responded to this letter alleging that

1

the prior art lacked numerous elements of the asserted claims.[1] *Id.*

At claim construction, the parties raised disputes regarding four terms. (*See* Doc. No. 124 at 4-12). Upon completion of the *Markman* hearing, BarTex informed the Court that in light of the claim construction, BarTex could not distinguish its asserted claims from the prior art. (Doc. No. 154 at 3). Accordingly, the Court ruled the '377 patent invalid under 35 U.S.C. § 102(b), and BarTex voluntarily dismissed without prejudice its claims of infringement, subject to reinstatement on remand. *Id.* FedEx then filed its original Motion for Attorneys' Fees (Doc. No. 156). While that motion was being briefed, BarTex appealed to the Court of Appeals for the Federal Circuit, contesting the Court's claim construction. (Doc. No. 158). The Court declined to rule on FedEx's motion for attorneys' fees, giving FedEx the opportunity to renew the motion once the appeal became final (Doc. No. 165). The Federal Circuit held oral argument and affirmed the Court's ruling without opinion under Fed. R. App. P. 36 (Doc. No. 172-1). With the appeal now finalized, FedEx has renewed its Motion for Attorneys' Fees (Doc. No. 171).

## **LEGAL STANDARD**

35 U.S.C. § 285 provides that "[t]he court in exceptional cases may award reasonable attorneys' fees to the prevailing party." An exceptional case is one in which "there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed.R.Civ.P. 11, or like infractions." *Brooks Furniture Mfg., Inc.*

---

[1] Unsatisfied with BarTex's response to the first letter, FedEx sent BarTex another Rule 11 letter stating that BarTex had not provided an adequate response. (Doc. No. 156 at 6). BarTex never responded to the second Rule 11 letter. *Id.* BarTex notes that FedEx did not comply with Fed. R. Civ. P. 11 in sending the Rule 11 letter, which requires a party to serve a motion requesting the withdrawal of the frivolous claims. *(*Doc. No. 160 at 4); *See* Fed. R. Civ. P. 11(c).

2

*v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381 (Fed. Cir. 2005). Absent litigation misconduct, attorneys' fees may be awarded if (1) "the litigation is objectively baseless" and (2) "the litigation is brought in subjective bad faith." *Id.* The first prong, objective baselessness, is identical to the objective recklessness standard used to determine enhanced damages and attorneys' fees for willful infringement. *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377 (Fed. Cir. 2011) (citing *In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (*en banc*)). Thus, for objective baselessness to exist, the asserted infringement argument must be "so unreasonable that no reasonable litigant could believe it would succeed." *Id.* at 1378. The second prong, subjective bad faith, may be shown by wrongful intent, recklessness, or gross negligence. *Phonometrics, Inc. v. Westin Hotel Co.*, 350 F.3d 1242, 1246 (Fed. Cir. 2003). However, the Supreme Court has stated that "[o]nly if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993).

Due to the presumption that a claim of infringement of a duly granted patent is made in good faith, both the objective and subjective prongs of this two part test must be established by clear and convincing evidence. *Brooks Furniture*, 393 F.3d at 1382. Should a case be found exceptional under section 285, the decision to award attorneys' fees and the amount of those fees "are within the district court's sound discretion." *Id.*

## **DISCUSSION**

In its original Motion for Attorneys' Fees, FedEx argues that (1) BarTex asserted a meritless claim construction argument (Doc. No. 156 at 9-11); (2) BarTex, in opposing FedEx's invalidity claims, asserted objectively baseless positions in subjective bad faith (Doc. No. 156 at 8-9); and (3) BarTex engaged in litigation misconduct (Doc. No. 156 at 13-15). Each of these arguments will be

addressed in turn.

## I. BarTex's Claim Construction Positions Were Not Meritless.

The *Markman* hearing addressed the meaning of "scanning process," "second," "abbreviated," and "personal identification information," as used in the '377 patent. (Doc. No. 124 at 4-13). BarTex argues that its case turned on claim construction (Doc. No. 160 at 1). BarTex believes that had the Court construed the four disputed claim terms in its favor, the '377 patent would have been valid, despite FedEx's prior art. *Id.* As will be explained below, while the Court did not ultimately adopt BarTex's proposed constructions, BarTex did not argue positions that were "so unreasonable that no reasonable litigant could believe it would succeed." *See ILOR, LLC*, 631 F.3d at 1378. Further, once the contested terms were construed against BarTex, BarTex did not continue litigation in this Court, but instead consented to summary judgment of invalidity and challenged the construction on appeal. (Doc. No. 160 at 1-2).

### A. "Scanning Process"

BarTex argues the term "scanning process," as used in claims 1 and 10, means "the process by which the bar code is read that requires a link or call to a database." (Doc. No. 96 at 9). BarTex proposes that the patent discloses two embodiments: one where the bar code itself represents information, and a second where the bar code represents an address in a database where the information is stored. (Doc. No. 96 at 9). Because claims 1 and 10 recite a "scanning process," as opposed to claim 17, which describes "information encoded" in the bar codes, BarTex contends "scanning process" requires a link to a database, rather than reading the "information encoded" in the bar code itself. (Doc. No. 96 at 11).

BarTex cites the specification in support of its proposed construction, referencing the

Summary of the Invention, which teaches "[t]he bar codes can represent the information itself, or can represent an address from a look up database which includes more information about the bar code." ('377 patent, Col. 1:33-35). Further, BarTex points to specific examples in the specification in which a lookup code, derived from a bar code, is used to interface with a database to retrieve a larger piece of information. (*See* '377 patent, Col. 4:2-8; Col. 4:34-64). Because BarTex points to portions of the specification that do not unreasonably support its proposed construction, BarTex's claim construction argument does not rise to a level of objective baselessness.

### B. "Second"

BarTex argues that the term "second" means "the bar code is independently positioned and/or placed." (Doc. No. 96 at 12). BarTex contends that because the claims refer to a "first . . . portion/part" and a "second . . . portion/part," the claims define two separate bar codes. (Doc. No. 96 at 12) (citing the '377 patent Col. 7:60-67; Col. 8:38-43). The '377 patent teaches that there is a linear portion/part and a non-linear portion/part. (Doc. No. 96 at 13-14) (citing the '377 patent Col. 6:6-43). The linear portion/part can be scanned to obtain the information encoded, or the non-linear portion/part can be scanned to obtain the information encoded in the linear portion, as well as any additional information. *Id.* Because the specification describes independently scanning either portion of the bar code, BarTex contends that the placement of one portion of the bar code is independent of the placement of the other portion. *Id.* Further, BarTex argues that, during prosecution, the inventor described the patent as defining "two different bar codes in two different formats." *Id.* at 12.

The Court found that the term "second" distinguishes repeated instances of an element and does not create a requirement for independent or dependent spacing of bar codes. (Doc. No. 124 at

5

9). In its Memorandum Opinion and Order concerning claim construction, the Court noted that the term "second" "simply distinguishes a second bar code portion or part." *Id.*; *See 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1371 (Fed. Cir. 2003) ("The use of the terms 'first' and 'second' is a common patent-law convention to distinguish between repeated instances of an element or limitation."). Although the term "second" is one that is well grounded and defined in patent law, the Court does not find BarTex's argument so unreasonable as to rise to the level of objective baselessness. *Id.* BarTex points to parts of the specification and prosecution history that describe independent scanning and separate bar codes. While its arguments do not support reading an independent placement limitation into the word "second," BarTex's proposed construction does not make this case exceptional.

### C. "Abbreviated"[2]

BarTex argues that the term "abbreviated" means "one or more characters that represent some larger piece of information that can be linked or called to a database, and that database, using the character(s), can decipher or determine the larger piece of information represented." (Doc. No. 96 at 15). BarTex contends that its proposed construction of this term "adds clarity in the context of the claim(s) as a whole." *Id.* BarTex argues that in the context of claim 10 and its proposed construction of the term "scanning process," the abbreviated information may be utilized to "determine or decipher some larger piece of information that is retrieved from a database." *Id.* BarTex calls the Court's attention to the specification where, for example, the abbreviation "AD 4DMKDP" can be used to access a database, which then returns an image of a person. ('377 patent,

---

[2] While generally agreeing with FedEx's proposed construction of "abbreviated", the Court found it more appropriate to construe the term "first abbreviated information." (*See* Doc. No. 124 at 11).

Col. 4:2-8; *see also* Col. 4:34-64). BarTex notes that claims are not limited by examples described in the specification, but argues that claim 10 and the term "abbreviated" broadly allows any abbreviation to retrieve some larger piece of information. (Doc. No. 96 at 16).

The Court disagreed with BarTex's proposed construction noting that "[o]utside the claim language, the term 'abbreviated' does not appear in the '377 patent." (Doc. No. 124 at 10). The Court stated that the example BarTex offers in support of its construction "does not describe abbreviated information as used in claim 10." *Id.* at 11. Rather, the abbreviation in BarTex's example represents complete information that is obtained from the scanning process. *Id.* That information may then be used to access a database. *Id.* Although it generally agreed with FedEx's argument that "abbreviated" should be given its ordinary meaning (i.e. shortened), the Court found it more appropriate to construe the term "first abbreviated information." The Court interpreted the term to mean "an amount of information found in the first information that is shorter or briefer than that which is found in the second information." *Id.* Again, while the Court disagreed with BarTex's proposed construction of the term "abbreviated," BarTex's argument is not objectively baseless. This conclusion is further supported by the fact that the Court did not accept FedEx's proposal, instead deciding to construe the entire phrase "first abbreviated information." *See id.*

**D. "Personal Identification Information"**

Finally, BarTex argues "personal identification information" should mean "information which is used to personally identify a user." (Doc. No. 96 at 16). BarTex argues that the word "user," which could reference a person or a non-person (i.e. a corporation), is used throughout the '377 patent in conjunction with "personal identification information" and the claimed inventions. (Doc. No. 101 at 10; '377 patent, Col. 3:1-30; Col. 5:16-45). The Court decided that "personal

identification information" is readily understandable by a jury and does not require construction. (Doc. No. 124 at 12). However, the Court did rule that the term refers only to information that identifies a person. *Id.* The specification provided no support to suggest that "personal identification information" could refer to a non-person entity. *Id.* While this may arguably be the weakest argument offered by BarTex, its proposed construction does not amount to objective baselessness. It was not wholly unreasonable for BarTex to suggest that, because a corporation or other non-person entity may be a user, "personal identification information" may be used to identify a non-person entity.

The Federal Circuit has recognized that, "[c]laim interpretation is not always an exact science, and it is not unusual for parties to offer competing definitions of even the simplest claim language." *iLOR, LLC*, 631 F.3d at 1379 (Fed. Cir. 2011) (quoting *Q-Pharma, Inc. V. Andrew Jergens Co.*, 360 F.3d 1295, 1301 (Fed. Cir. 2004)). While the Court ultimately rejected BarTex's proposed constructions, FedEx has failed to produce clear and convincing evidence that BarTex's proposed claim constructions were objectively baseless; therefore, a determination of whether BarTex raised these arguments in subjective bad faith is not appropriate. *See Prof'l Real Estate Investors*, 508 U.S. at 60 ("Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."). Accordingly, a finding that this case is exceptional is not appropriate.

II. **BarTex Did Not Assert Objectively Baseless Positions In Subjective Bad Faith By Contesting Invalidity and Alleging Infringement.**

FedEx argues that BarTex was unreasonable in asserting infringement and opposing invalidity of the '377 patent. FedEx argues that BarTex did not act in good faith after receiving Rule

8

11 letters because even if the contested terms were construed in BarTex's favor, its patent would still be invalidated by prior art. (Doc. No. 156 at 5; Doc. No. 163 at 1). Further, FedEx argues that BarTex never amended its infringement claims to show how FedEx's labels infringe the '377 patent under BarTex's construction of the contested terms. (Doc. No. 163 at 1-2).

Finally, FedEx argues that even though the '377 patent describes *bar codes*, BarTex alleged that FedEx shipping *labels* infringed its patent. The '377 patent describes bar codes with first and second portions or parts. (Doc. No. 156 at 3-4). During claim construction, BarTex agreed that "part" and "portion" mean "a piece of a bar code." *Id.* Yet, BarTex continued to claim literal infringement by FedEx's labels. (Doc. No. 156 at 12). FedEx contends that because BarTex did not timely raise a theory of infringement under the Doctrine of Equivalents, BarTex's infringement claims were frivolous. *Id.*

The Court never reached the questions of invalidity and infringement, other than those addressed in granting summary judgment. Once BarTex realized it could not prevail at trial with the construction provided by the Court, BarTex conceded to summary judgment in order to appeal the Court's construction. *Id.* Not having reached these issues prior to BarTex's appeal, the Court finds that further litigation concerning these issues is not proper. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation.").

The Court finds that because BarTex conceded to invalidity when its theory of validity was no longer viable under the Court's claim construction, BarTex was not "manifestly unreasonable." Therefore, the Court does not find this case to be exceptional.

### III. BarTex Did Not Engage In Litigation Misconduct.

Finally, FedEx argues that BarTex engaged in litigation misconduct. (Doc. No. 156 at 13).

FedEx contends that BarTex, by pursuing frivolous claims, engaged in vexatious litigation. *Id.* However, as has already been discussed, BarTex contested four terms that it believed would be case dispositive. (*See* Doc. No. 96 at 9-17). As stated above, when the Court's construction no longer supported BarTex's theory of validity, BarTex conceded to summary judgment of invalidity and appealed the Court's claim construction. (Doc. No.154 at 2-3). BarTex merely opposed FedEx's Motion for Summary Judgment to preserve its position on appeal and to give the appellate court a fully developed record, and that action did not result in continued litigation. Because FedEx offers no evidence that BarTex's actions were intended to prolong litigation, the Court does not find that BarTex's actions constitute vexatious litigation.

Further, FedEx argues BarTex engaged in litigation misconduct because, at his deposition, BarTex's expert could not identify the linear bar codes on FedEx's shipping labels as type 128 UPC bar codes, even though that information was included in his Initial Infringement Report. (Doc. No. 156 at 14). Notably, FedEx asserts this argument even though its own Rule 30(b)(6) witness testified that FedEx uses type 128 UPC bar codes. (Doc. No. 160-9 at 17-18). Additionally, FedEx argues that BarTex erroneously relied on expert infringement opinions that misquoted FedEx's documents. (Doc. No. 156 at 14-15). Finally, FedEx argues that BarTex inappropriately relied on declarations from witnesses that contradicted prior testimony. (Doc. No. 156 at 13-14).

The Court does not find BarTex's actions amount to litigation misconduct. The fact that an expert, at deposition, could not reproduce his original findings does not necessarily amount to litigation misconduct, especially when FedEx essentially conceded the validity of those findings through its own witness. Additionally, BarTex's Supplemental Infringement report cited to the documents that were misquoted, tending to show a lack of intent to deceive. Further, the misquoted

documents were not the expert's only basis for his conclusion. There is no evidence before the Court that suggests that this instance was nothing more than a citation error; therefore, the Court does not find any misconduct. Finally, the Court does not find BarTex necessarily engaged in misconduct by relying on declarations that contradicted prior testimony; that allegation goes largely to the credibility of the witness, not misconduct. While these actions cause concern, the Court cannot conclude that, in total, these actions create a basis to find this case exceptional.[3]

## CONCLUSION

As the Federal Circuit has noted, "only a limited universe of circumstances warrant a finding of exceptionality in a patent case." *Wedgetail, Ltd. v. Huddleston Deluxe, Inc.*, 576 F.3d 1302, 1304 (Fed. Cir. 2009). Further, the Federal Circuit has emphasized that an award of attorneys' fees under section 285 is only proper where awarding fees "is necessary to prevent gross injustice." *Forest Labs., Inc. v. Abbott Labs.*, 339 F.3d 1324, 1329 (Fed. Cir. 2003). In light of the Federal Circuit's guidelines and for the reasons discussed above, the Court does not find this case to be exceptional under 35 U.S.C. § 285. Therefore, FedEx's Motion for Attorneys' Fees is **DENIED**.

**So ORDERED and SIGNED this 10th day of June, 2011.**

_____
JOHN D. LOVE
UNITED STATES MAGISTRATE JUDGE

---

[3] FedEx argues that the Federal Circuit did not ask counsel for FedEx any questions at oral argument and issued a Rule 36 affirmance, therefore, showing that this case is exceptional. (Doc. No. 171 at 1-2). But these facts do not override the Court's findings, expressed herein, that this case is not exceptional.